THE UNION TRUST COMPANY OF NEW YORK, *et al.*, v.
I. C. CUPPY.

RAILROAD OVER WATERCOURSE; *Damages; Limitation of Action; Lia-
bility; Notice.* In 1870 the defendant railway company constructed a
railroad across a natural watercourse, named "Little creek," about one
mile below the plaintiff's land, filling up the natural channel of the
stream, which was about one hundred feet wide, and constructing a cul-
vert, about thirty feet wide, immediately south of such natural channel.
In times of high water, another stream, north of Little creek, called "Owl
creek," would overflow its banks, and a portion of its waters would run
across the low lands between Owl creek and Little creek, and into Little
creek; and the culvert constructed by the railway company was insuffi-
cient to permit all these waters to readily pass through; and the waters
would necessarily back up higher and higher, until they would reach back
to and cover nearly all the plaintiff's land. In this manner the plaintiff
was injured and sustained damages in both the years 1876 and 1877. At
the time the damages were sustained in 1876, the railroad was in the
hands of a receiver; and at the time the damages were sustained in 1877,
the railroad was in the hands of the defendant trust company, under and
by virtue of a contract with the railway company and others — the trust
company operating the road for the benefit of the railway company and
of its creditors. The court gave to the jury the following, among other
instructions:

"Railroad companies, in the construction of their roads over water-
courses, are required to leave such water-ways or openings as are sufficient
to afford an outlet for all water that may reasonably be expected to flow
through such watercourse. And this must be with reference to such un-
usual and extraordinary freshets as might reasonably have been ex-
pected after careful inspection of the size of the stream, the width of its
bottom, the height of its banks, its capacity for carrying water, and the
surface of the country contributing to its flow; and if they fail to do so,
they are liable in damages to the full injury occasioned thereby."

"A railroad company, however, is not bound to anticipate extraordi-
nary changes of seasons, nor such unusual freshets or heavy falls of water
as could not be detected by a skillful engineer after carefully taking the
observation to which I have just referred, nor to guard against every
possible contingency; so that if you find that the damage sustained by
plaintiff was the result of such extraordinary rainfalls, or freshets, or
inundations, as could not be apprehended in the manner referred to, and
if you also find that the defendants were not otherwise in fault, the plain-
tiff cannot recover, and your verdict should be for the defendants."

"Some testimony has been introduced tending to show that at the
times of the plaintiff's alleged injuries, the water of Owl creek overflowed
its banks, and rushed with considerable force and volume into the valley
of the stream in controversy, and upon the lands of the plaintiff. With
reference to this matter, you are instructed that the railroad company
was not bound to construct its culvert for the passage of such water, un-
less the examinations to which I before referred, made by a skillful

engineer, would reasonably lead him to anticipate such a result; so that if you believe the damage claimed by plaintiff was sustained in consequence of these waters from Owl creek, thus breaking through and overflowing its banks, and that such a result could not have been anticipated from the requisite observation made at the time the culvert was constructed, and was not brought to the knowledge of the defendants before the plaintiff sustained the damage complained of, the plaintiff cannot recover, and you should find for the defendants."

"And now with particular reference to the defendant, the Union trust company, you are instructed that while it may not have constructed the culvert in question, it would still be liable for any damage occurring during the time the said trust company had charge of the road, occasioned by its wrongful construction, if you find that prior to such injury the said company had actual knowledge that the culvert in question was constructed in such a way as to overflow and flood the land above said culvert, and knowing such fact, still maintained said culvert in such condition. But without this knowledge the Union trust company would not be liable. It is not necessary in order to hold defendant — the Union trust company — liable for the damage claimed to have been sustained in 1877, that any request should have been made by plaintiff to said trust company to remodel said culvert. All that would be necessary would be for the plaintiff to show that defendant — the trust company — knowing the damage likely to be occasioned by the culvert, permitted it to remain in such condition."

"The defendant, the Missouri, Kansas & Texas railway company, at the time it constructed its road, was not bound to build culverts or aqueducts for the purpose of draining adjacent lands, nor for the purpose of giving passage to the natural flow of surface-water; nor is the said defendant liable in an action for damages occasioned by the accumulation of surface-water, on account of any embankment erected on its right of way; nor by the fact that a culvert could have been placed in such embankment to have afforded an outlet for all such surface-water; nor by the fact that a culvert was placed therein insufficient to afford such outlet; and if you find that the damage claimed by the plaintiff was caused by the accumulation of surface-water on account of any obstruction to its natural flow created by defendant, then I instruct you that the plaintiff in this case cannot recover, and you must find for the defendant."

"It was the duty of the defendant, the Missouri, Kansas & Texas railway company, in constructing the culvert in question, to provide for the free flow of such amount of water as might reasonably have been anticipated to flow in said stream; and if by reason of the failure of said defendant to perform such duty the plaintiff sustained any injury, the said defendant, the M. K. & T. Rly. Co., would be liable for such injury, even if at the time of the injury the management of the road had passed out of the hands of the M. K. & T. Rly. Co. into those of the receiver or of the Union trust company."

The jury found in favor of the plaintiff and against the defendants, and judgment was rendered accordingly in favor of the plaintiff and against the railway company for one thousand dollars, and against the Union trust company of New York for five hundred dollars; but the judgment was so rendered that the satisfaction or extinguishment of the judgment against the railway company would extinguish both judgments, and the satisfaction or extinguishment of the judgment against the trust company would satisfy five hundred dollars of the judgment

rendered against the railway company; so that, in fact, the judgment against both defendants amounted in the aggregate to only one thousand dollars. *Held*—

1. That the jury were amply justified upon the facts of the case in finding in favor of the plaintiff and against the defendants, that the culvert was manifestly insufficient.

2. That the instructions given by the court to the jury were not erroneous as against the defendants.

3. That a railroad company in constructing its road over a natural watercourse is required to leave such openings as are sufficient to afford an outlet for all water, (from whatever source it may come, and in times of floods and freshets, as well as at other times,) which may reasonably be expected to flow through such watercourse.

4. That the damming, or partial damming, of Little creek was in the nature of a nuisance; and that the plaintiff's cause of action for the damages which he sustained on account of such obstruction accrued at the time that he sustained such damages; and that the statute of limitations then commenced to run against his cause of action, and not before.

5. That the Union trust company was liable for participating in maintaining such nuisance; that for the plaintiff to recover against such trust company it was not necessary for him to prove that prior to the damage he notified the trust company of the defective condition of the culvert, or that any request was made upon the company to remedy or abate the same; but all that was necessary was to prove that the Union trust company, before such damage occurred, had full knowledge of all these matters, independent of any such notice.

6. That the railway company was liable for the injury that occurred during the time that the property was in the hands of a receiver, (*K. P. Rly. Co. v. Wood*, 24 Kas. 619.); and was also liable as principal while the trust company was liable as agent, for the injury that occurred during the time that the property was in the hands of the Union trust company.

7. That the judgment was not in excess of the amount claimed in the petition, although the petition claimed judgment for only $1,380.

### *Error from Allen District Court.*

ACTION brought by *Cuppy* against the *Union Trust Company of New York* and the *M. K. & T. Rly. Co.*, to recover for damages to plaintiff's land and crops. Trial at the March Term, 1880, of the district court, and finding and judgment for plaintiff. The defendants brings the case here. The opinion states the facts.

*David Kelso*, for plaintiffs in error:

1. The demurrer to the evidence as not proving a cause of action, should have been sustained, because the *gravamen* of the action is, the improper or negligent construction of the culvert and its maintenance in that condition; and the action itself was barred by the statute of limitations.

The testimony of the plaintiff is, that the culvert was built in 1870, and that there had been.no change in it from the time it was built down to the happening of the damage complained of, for the recovery of which this action was begun, on the 28th of May, 1878. Cuppy claims to have become the owner of the land damaged before the culvert was built, and to have resided thereon until 1878. According to this testimony, the damage was actionable when the culvert was constructed, as the wrong and its continuance were necessarily an injury. If the plaintiff can recover at all in this case, it is insisted that the rule of damage herein is the difference between the value of the land before the construction of the culvert and the value afterward; and the action for this accrued immediately after the culvert and railroad were built, in 1870, more than two years prior to the commencement of this suit. (45 Iowa, 652, 657.)

Diverting the channel of the stream, and the unskillful and improper building of the culvert, were the original causes of the damage. It was an injury to a right, and an action therefor then accrued. (10 Ex. 259; 3 Foster [N. H.] 83; 11 Kas. 224, and cases cited.) If the culvert and road at the crossing of this stream had been skillfully and properly constructed, and damage had occurred to the plaintiff on account thereof, there would be no remedy. It would be *damnum absque injuria*. (23 N. Y. 42. See also 2 Parsons on Contracts, 5th ed., 771; 11 Kas. 224; 40 N. Y. 191, 204; 23 id. 42; 45 Iowa, 652; Angell on Watercourses, § 93.)

2. The demurrer to the evidence given by the plaintiff and in his behalf, for the reason it did not prove a cause of action against the Union trust company of New York, should have

been sustained; and the trial court erred in overruling the same. The evidence does not prove, nor tend to prove, that prior to the damage sustained by defendant in error in June, 1877, he notified the Union trust company of New York of the defective condition of the culvert, or that any request was made upon it to remedy or abate the same. In any event, this was necessary to hold the latter company liable. (35 Wis. 675; 9 N. H. 91; 22 id. 296; 13 Conn. 303; 11 Minn. 15; 44 Me. 154; 8 Bush, 404, 3 Allen, 264; 39 Vt. 558; 25 N. J. L. 97; 1 Duv. 254.)

3. The court erred in refusing to give the jury the instructions asked by plaintiff in error. The second request states the law correctly, and should have been given as requested. The law does not require railroad companies in constructing their roads across streams to do more than is contained in this request; and it follows from this that the third and sixth requests should also have been given, as such companies are not bound to anticipate that other streams, not tributary to the one in question, will overflow their banks in seasons of heavy rains and freshets, and to construct their water-ways and culverts accordingly. (57 Mo. 433.)

4. The motion for a new trial should have been granted, for the various erroneous instructions to the jury, and for each. The court erred in charging the jury that "the law makes no rule applicable to individuals that does not apply to this case." This would make parties acting under the sanction of law equally liable with individuals without it. (1 Redfield on Railways, 309, 310; 4 N. Y. 195; 23 id. 42. See also 57 Mo. 433; 22 Kas. 763.)

The court erred in charging the jury that the M. K. & T. Rly. Co. would be liable for the injuries in this case, even if at the time of the injury, the road property had passed out of its hands, and into those of the receiver, or the Union trust company. This would be extreme hardship, to require the defendant company to be answerable for damages occurring while the possession of the railroad property was taken from it and held adversely to it by the court. Prior to this

time no complaint had been made that this culvert was insufficient, and not until two years thereafter. The receiver is just as much liable in this case as he would be by putting in use defective machinery, which resulted in injury to the person of an employé. (20 Ohio St. 137; 23 Ind. 553; 1 Lans. 288; 17 Kas. 232.)

5. The judgment in this case is erroneous, and is inconsistent with the verdict of the jury, and should be reversed. If any judgment could be entered in this case, it should be one in accordance with the material allegations and proof.

The court erred in allowing the jury to take into consideration the question whether the Union trust company of New York was receiving moneys which it would "become its duty" to pay over to the M. K. & T. Rly. Co., and in making any order thereon. This question was immaterial, and should not have been submitted to the jury. (32 Miss. 347.)

*Cates & Keplinger*, and *G. A. Amos*, for defendant in error:

1. Plaintiffs in error insist that the demurrer to the evidence should have been sustained, because the *gravamen* of the action is, the improper or negligent construction of the culvert and its maintenance in that condition, and that the cause of action is barred. This is not so. Cuppy complains of what hurt him, and not of what did not hurt him at all. The wrongful thing of which he complains, is the overflow of water. It will be observed that the culvert in question was built, not upon Cuppy's land, but on that of the railroad company. (17 Kas. 224.)

2. It is urged that the Union trust company was entitled to express notice of the insufficiency of the culvert. Such is not the law. Actual knowledge is sufficient; and there is abundant evidence that the company had actual knowledge. (51 N. Y. 582; 64 Mo. 149; 61 id. 354; 38 Wis. 21; 40 Cal. 396; 11 Mich. 77.) There is an exhaustive discussion of this precise point in a note, p. 339, 14 Am. Dec. After noticing some authorities which hold that notice is necessary, the editor says: "But the better opinion would seem to be

that if he had knowledge that the nuisance exists, and that it is the occasion of the injury to the plaintiff, no express notice or request to abate is necessary."

3. All the *law* contained in the instructions refused was embodied in the instructions actually given.

4. Even if the Union trust company held adversely to the M. K. & T. Rly. Co., it would still be liable, because of the culvert's original construction. ( 51 Wis. 683; 3 N. H. 88; 44 id. 143; Wood on Nuisances, 827; 1 Hilliard on Torts, 601.)   The erection in such a case is the basis of defendant's liability. ( 12 Minn. 451.)   His liability is not diminished by the fact that he cannot enter to abate it, ( 9 Pa. St. 345; Sedgw. on Damages, 162, 163,) as when nuisances are made on land not his own. ( 7 M. & W. 453.   See especially 14 Am. Dec., p. 328, note.)   But there is no indication that the Union trust company holds adversely to the M. K. & T. Rly. Co.   The latter selected the former as its trustee, and dictated the terms of the trust.   In such a case the trustee is agent. ( 7 Cent. L. J. 58.)

5. Whatever error there may have been in submitting to the jury the construction of the contract, it worked no injury to the plaintiffs in error, for the findings of the jury are correct.   The petition alleges injuries for which each defendant is personally liable, and without regard to the liability of the other defendant.   It also contains allegations showing that one defendant is insolvent, and that the other defendant holds the control and management of the property, whereof the insolvent defendant is the owner, and is receiving from time to time money which belongs to the other defendant.   If there be any error in the record, it is such an error as does not injure the Union trust company ; for the judgment requires it to pay the judgment against the M. K. & T. Rly. Co. out of the funds which were or are to be in its hands and to go to the M. K. &. T. Rly. Co. ;. and that all payments made upon the judgment against the latter over $500 shall be credited on the judgment against the former.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by I. C. Cuppy against the Union trust company, of New York and the Missouri, Kansas & Texas railway company for damages to the plaintiff's land and crops, alleged to have been caused in the years 1876 and 1877 by the overflow of water on the plaintiff's land, caused by the defendant's damming, or partially damming, a natural watercourse. The facts appear to be substantially as follows :

From sometime prior to the year 1870 down to the present time, the plaintiff has been the owner of the land upon which the damages are alleged to have been committed. Across this land a natural watercourse or stream flows, from west to east, and continuing easterly, passes into the Neosho river. This stream is named "Little creek." In 1870 the Missouri, Kansas & Texas railway company constructed a railroad, not quite a mile east of the plaintiff's land, running north and south, across this stream. At the place where the railroad track crossed this stream the channel of the stream from bank to bank was about one hundred feet wide. One witness stated that it was from one hundred and twenty-five to one hundred and thirty feet wide. The railroad company filled up this channel, and immediately south of the channel built a culvert thirty feet wide. This culvert is something less than one mile east of the plaintiff's land, and between his land and the Neosho river. Little creek is a small stream, but in times of floods and freshets a large amount of water flows through its channel. This has been so for years. A short distance north of Little creek is another stream, called "Owl creek," and in times of high water Owl creek overflows its banks and a portion of its waters runs across the low lands between Owl creek and Little creek, and into Little creek. This has also been so for years. Indeed, it has been so ever since the country was settled ; and this fact is within the knowledge of all persons who have resided in that vicinity for any great length

of time. It was known to be so for several years before the Missouri, Kansas & Texas railroad was built. At the times the damages of which the plaintiff complains were sustained, the waters in both creeks were very high, and a portion of that of Owl creek passed over from Owl creek and into Little creek, and flowed down, with the water of Little creek, to the railroad track. When the water reached the railroad track where the track crossed the old channel of Little creek, the water turned southward, almost at right angles, and passed to the small culvert built by the railroad company; but as this culvert was too small for the amount of water flowing to it to pass through it readily, the water necessarily backed up, higher and higher, until it reached back to and covered nearly all of the plaintiff's land; and by this means the injuries of which the plaintiff complains were caused. The plaintiff sustained damages in this manner in both the years 1876 and 1877. Afterward the railroad company built another culvert, of two spans, immediately north of the old one, each span being forty feet wide, making the entire passage-way for water, including both culverts, one hundred and ten feet wide; and these two culverts together are hardly sufficient to carry off all the water that passes down Little creek at times of very high water.

I. We think the jury were amply justified in finding that the original culvert, thirty feet in width, constructed by the railroad company in 1870, was manifestly insufficient. Upon this subject, and upon the facts of the case, the court below instructed the jury as follows:

"Railroad companies, in the construction of their roads over watercourses, are required to leave such water-ways or openings as are sufficient to afford an outlet for all water that may reasonably be expected to flow through such watercourse. And this must be with reference to such unusual and extraordinary freshets as might reasonably have been expected, after careful inspection of the size of the stream, the width of its bottom, the height of its banks, its capacity for carrying water, and the surface of the country contributing to its flow; and if they fail to do so, they are liable in damages to the full

injury occasioned thereby. A railroad company, however, is not bound to anticipate extraordinary changes of seasons, nor such unusual freshets, or heavy falls of water as could not be detected by a skillful engineer after carefully taking the observation to which I have just referred, nor to guard against every possible contingency. So that if you find that the damage sustained by plaintiff was the result of such extraordinary rainfalls or freshets, or inundations, as could not be apprehended in the manner referred to, and if you also find that the defendants were not otherwise in fault, the plaintiff cannot recover, and your verdict should be for the defendants."

This instruction, we think, is correct; or at least it is not erroneous as against the plaintiffs in error, defendants below, and is as favorable to them as they had any right to expect or demand.

II. With reference to the waters of Owl creek, the court below instructed the jury as follows:

"Some testimony has been introduced tending to show that at the times of the plaintiff's alleged injuries, the water of Owl creek overflowed its banks, and rushed with considerable force and volume into the valley of the stream in controversy, and upon the lands of plaintiff.

" With reference to this matter, you are instructed that the railroad company was not bound to construct its culvert for the passage of such water, unless the examinations to which I before referred, made by a skillful engineer, would reasonably lead him to anticipate such a result; so that if you believe the damage claimed by plaintiff was sustained in consequence of these waters from Owl creek, thus breaking through and overflowing its banks, and that such a result could not have been anticipated from the requisite observation, made at the time the culvert was constructed, and was not brought to the knowledge of the defendants before the plaintiff sustained the damage complained of, the plaintiff cannot recover, and you should find for the defendants."

This instruction we also think is correct; or at least, it is not erroneous as against the plaintiffs in error, defendants below. The court had previously instructed the jury that the defendants were not liable for any obstruction or damming up of mere surface-water; so that the jury were particularly informed that unless the waters of Owl creek which flowed

across the low grounds and into Little creek had become a part of the waters of Little creek, the plaintiff could not recover. We think the water flowing from Owl creek into Little creek was undoubtedly the water of a natural watercourse before it left Owl creek. It perhaps became surface-water while passing from Owl creek to Little creek; but it became the water of a natural watercourse when it reached Little creek and passed into it; and the defendants then had no more right to obstruct it than they had to obstruct any of the other water of Little creek. Indeed, it is at least doubtful whether the defendants, or any person, would have had any right to obstruct this water, even while it was flowing from Owl creek toward Little creek, so as to injure the land or property of any upper proprietor. (*Shane v. K. C. St. J. &c. Rld. Co.*, 71 Mo. 237; *Carriger v. East Tenn. &c. Rld. Co.*, recently decided by the supreme court of Tennessee; *McClure v. City of Redwing*, [9. N. W. Rep. 767,] recently decided by the supreme court of Minnesota.)

Even while the water was thus flowing from Owl creek toward Little creek, it presented some of the characteristics of a natural watercourse, and can hardly be considered as presenting only the characteristics of mere ordinary surface-water. Upon the question, however, of liability for obstructing this water while it was passing from Owl creek to Little creek, we do not desire to express any opinion.

As to what constitutes a natural watercourse, see the case of *Palmer v. Waddell*, 22 Kas. 352. The instructions of the court below are in harmony with this decision. With reference to the right of railroad companies to construct their roads across natural watercourses, see the 4th subdivision of § 47 of the act concerning corporations. (Comp. Laws of 1879, p. 224.) This subdivision provides, among other things, that any railroad company shall have the power " to construct its road across, along or upon any stream of water, watercourse, street, highway, plank road or turnpike, which the route of its road shall intersect or touch; but the company shall restore the stream, watercourse, street, highway, plank road or turn-

pike thus intersected or touched, to its former state, or to such state as to have not necessarily impaired its usefulness."

III. The plaintiffs in error (defendants below) also claim that whatever cause of action the plaintiff may have had, that it was barred by the statute of limitations before this action was commenced. We hardly think that this question is sufficiently raised to require any consideration; but as in our opinion the cause of action was not barred, we will proceed to consider the question.

The plaintiffs in error say that the *gravamen* of the action is the improper or negligent construction of the culvert, and its maintenance in that condition; that the testimony shows that the culvert was built in 1870, and that the record shows that this action was not commenced until May 28, 1878. Whether the plaintiff had any cause of action at the time of the building of the culvert or not, it is not necessary in this case to determine; for the building of the culvert is not the *gravamen* of this action. The foundation of this action is the obstruction of a natural watercourse, causing damage to the plaintiff; and the cause of this obstruction was the filling-up of the natural channel of such watercourse. The building of the culvert did no injury. It assisted as far as it could in avoiding the injury; and if it had been made about four times wider than it was, probably the injury would not have happened. The defendants had a right to construct and maintain their culvert; but it should have been a much larger culvert; and they had no right to fill up the natural channel of the watercourse, or to obstruct its waters, as they did. (See subdivision 4 of § 47 of the act concerning corporations.) It must also be remembered that the railroad was not built across the plaintiff's land. The defendants did not commit any trespass upon the plaintiff's land, or even enter upon it; and the plaintiff did not and could not obtain any compensation by virtue of any statutory condemnation proceedings, or any proceedings instituted under or by virtue of the right of eminent domain. The wrong committed by the defendants, or either of them, in the year 1870 or afterward, was in the

nature of a nuisance, and a continuing nuisance; and while possibly the plaintiff might at any time have had an action to abate the nuisance, yet he nevertheless had the right to sue at any time after any particular damage was done him, for the amount of such damage. It is possible, also, that the plaintiff might have waived his right at any time to consider the obstruction of the stream as a nuisance, and might have considered it as giving to the defendants a permanent right, a permanent easement upon his land, and might then have sued the railroad company for the permanent injury to his land, and recovered for the injury as in a condemnation proceeding; but he was not bound to treat the obstruction as an easement, or to waive his right to treat it as a nuisance, and he has not done so; and therefore, whenever he sustains damages because of such obstruction or nuisance, a cause of action arises in his favor; and the statute of limitations does not commence to run on such cause of action until the cause of action has accrued. On this subject, see Angell on Limitations, § 300.

IV. The plaintiffs in error claim that there was a misjoinder of parties defendant in the court below. This question was not raised in the court below, and we do not think that it is necessary to decide it in this court. With reference to this question, the court below certainly did not commit any substantial error.

V. The plaintiffs in error also claim that no cause of action was proved against the Union trust company of New York. We think the proof was ample, and that the findings of the jury were sustained by sufficient evidence. The plaintiff set forth in his petition two causes of action, one for damages sustained in the summer of 1876, and the other for damages sustained in the summer of 1877; and the evidence showed that he sustained these damages, as alleged, except that the damage in 1876 was sustained in the month of May, and the damage in 1877 was sustained in the month of June. The evidence also seems to show that in July, 1876, the Union trust company of New York, by virtue of a contract with the

Missouri, Kansas & Texas railway company and others, entered into and took possession of all and singular the property and franchises of the Missouri, Kansas & Texas railway company, and held and managed the same as a trustee or mortgagee of the property under the contract above mentioned, for the benefit of the Missouri, Kansas & Texas railway company and its creditors, and paying the Missouri, Kansas & Texas railway company one thousand dollars per month; and that by such contract the Union trust company was to be held responsible only "for good faith . . . in the management, care and disposition" of such property. It is claimed that the evidence does not prove, or tend to prove, that prior to the damage sustained by the plaintiff in June, 1877, that he notified the Union trust company of the defective condition of the culvert, or that any request was made upon the company to remedy or abate the same; but the evidence does show that the Union trust company had full knowledge of all these matters, independent of any such notice. Upon this question the court below instructed the jury as follows:

"And now with particular reference to the defendant, the Union trust company, you are instructed that, while it may not have constructed the culvert in question, it would still be liable for any damage occurring during the time the said trust company had charge of the road, occasioned by its wrongful construction, if you find that prior to such injury the said company had actual knowledge that the culvert in question was constructed in such a way as to overflow and flood the land above said culvert, and knowing such fact, still maintained said culvert in such condition. But without this knowledge, the Union trust company would not be liable.

"It is not necessary, in order to hold defendant, the Union trust company, liable for the damage claimed to have been sustained in 1877, that any request should have been made by plaintiff to said trust company to remodel said culvert. All that would be necessary would be for plaintiff to show that defendant, the trust company, knowing the damage likely to be occasioned by the culvert, permitted it to remain in such condition."

This instruction we think is correct. Both the Missouri,

Kansas & Texas railway company and the Union trust company were liable for the injuries sustained by the plaintiff in 1877. These injuries are founded in tort, and all parties participating in the tort are liable. The Missouri, Kansas & Texas railway company is liable as principal, and as the original cause of the injuries; while the Union trust company is liable as agent, and as the immediate and direct cause of the injuries; and no contract between the Missouri, Kansas & Texas railway company and the Union trust company could relieve the Union trust company from its liability for the commission of the wrong. All parties in the commission of a wrong are equally liable.

It is also urged that the Union trust company was entitled to express notice of the insufficiency of the culvert. We do not think that they were necessarily entitled to such notice. Actual knowledge of such insufficiency, we think, is all that was necessary; and that they had actual knowledge, was abundantly shown. That actual knowledge in such cases is sufficient is sustained by abundant authority. (See the cases cited in the brief of defendant in error.)

VI. The plaintiffs in error also claim that no cause of action was proved against the Missouri, Kansas & Texas railway company. And upon this question we also think that the proof was ample, and that the findings of the jury were sustained by sufficient evidence. Upon this question the court instructed the jury as follows:

"The defendant, the Missouri, Kansas & Texas railway company, at the time it constructed its road, was not bound to build culverts or aqueducts for the purpose of draining adjacent lands, nor for the purpose of giving passage to the natural flow of surface-water; nor is the said defendant liable in an action for damages occasioned by the accumulation of surface-water, on account of any embankment erected on its right of way; nor by the fact that a culvert could have been placed in such embankment to have afforded an outlet for all such surface-water; nor by the fact that a culvert was placed therein insufficient to afford such outlet; and if you find that the damage claimed by the plaintiff was caused by the accumulation of surface-water on account of any obstruc-

tion to its natural flow created by defendant, then I instruct you that the plaintiff in this case cannot recover, and you must find for the defendant.

"It was the duty of the defendant, the Missouri, Kansas & Texas railway company, in constructing the culvert in question, to provide for the free flow of such amount of water as might reasonably have been anticipated to flow in said stream; and if by reason of the failure of said defendant to perform such duty the plaintiff sustained any injury, the said defendant, the M. K. & T. Rly. Co., would be liable for such injury, even if at the time of the injury the management of the road had passed out of the hands of the M. K. & T. Rly. Co. into those of the receiver or of the Union trust company."

It is the latter portion of this instruction to which the plaintiffs in error, defendants below, especially object; but we think the instruction is correct. And we think that both causes of action alleged against the Missouri, Kansas & Texas railway company were amply proved. That the Missouri, Kansas & Texas railway company is liable for the injury that occurred during the time that the property was in the hands of a receiver, we think is settled by the case of *K. P. Rly. Co. v. Wood*, 24 Kas. 619; and that it is liable for the injury that occurred during the time that the property was in the hands of the Union trust company of New York, we think is also settled by abundant authority in other states. See among others, the case of *Lohmiller v. The Indian Ford Water Power Co.*, 51 Wis. 683. See also authorities cited in the brief of counsel for defendant in error.

VII. Plaintiffs in error also claim that neither the insufficiency of the culvert nor any acts of the defendants in damming or partially damming Little creek, had anything to do with causing the damages sustained by the plaintiff. This was a question of fact for the jury, and the jury found against the defendants—and we think upon abundant testimony.

VIII. The plaintiffs in error also claim that the findings and judgment were in excess of the amount claimed in the plaintiff's petition. This, we think, is not true. The judgment is for $1,000 against the Missouri, Kansas & Texas

49—26 KAS.

railway company, and for $500 against the Union trust company; but the record shows that the judgment against the Union trust company is for $500 of the same amount for which judgment is rendered against the Missouri, Kansas & Texas railway company, and that whenever the judgment against the Missouri, Kansas & Texas railway company shall be extinguished or satisfied, it will extinguish both judgments; or that whenever the judgment against the Union trust company shall be extinguished or satisfied, it will satisfy $500 of the judgment rendered against the Missouri, Kansas & Texas railway company; so that in fact the judgment rendered against both defendants really amounts in the aggregate to only $1,000, while the petition claimed judgment for $1,380.

This, we think, disposes of all the questions raised by counsel; and finding no material error in the record, the judgment of the court below will be affirmed.

All the Justices concurring.