No. 29,205.

STEPHEN A. SNAVELY, *Appellant,* v. THE PRAIRIE OIL AND GAS COMPANY, *Appellee.*

(288 Pac. 541.)

Opinion filed June 7, 1930.

J. K. Demoss, of Neodesha, and E. D. Mikesell, of Fredonia, for the appellant.

T. J. Flannelly, Paul B. Mason, both of Independence, and W. H. Edmundson, of Fredonia, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for breach of the

provisions of an oil lease relating to use of shackle rods in operating for oil, and for abatement of the shackle rods as a nuisance. A demurrer to plaintiff's evidence was sustained, and he appeals.

The lease was executed on May 2, 1901, by Joseph D. Snavely and his wife, and by Lillie M. Snavely and her husband, the plaintiff. The lease included land other than the particular tract involved in this action, and some years after the lease was executed the particular tract was set off to Lillie M. Snavely. She continued to own it until 1927, when she deeded to plaintiff. Plaintiff testified that before he received his deed he had no title to the land except as husband of Lillie M. Snavely, and that whatever he did about the land he did as agent for his wife. The lease granted such—

"privileges on said land as may be necessary in operating for, producing and removing said oil and gas in a workmanlike and economical manner, including the right to use shackle work in operating the wells which may be drilled thereon, either alone or in connection with wells on adjoining lands; said shackle work shall be placed high enough to allow the land to be worked with teams. . . . No shackle rods to be put across cultivated lands without the consent of parties of the first part."

Between 1901 and 1919 defendant drilled and operated several oil wells. In the latter year defendant made a change in its method of operating the wells. A power plant was established on the land at its present location, and shackle rods for pumping wells on the land and other land were installed as they now exist. The rods are from two to four feet from the ground, and are supported in such a way that they may be laid on the ground.

In 1921 Lillie M. Snavely and her husband, the plaintiff, entered into an agreement with defendant whereby defendant surrendered a portion of the leased premises. The written instrument of surrender recited that, whereas defendant had a valid and existing oil lease of the entire tract, and the parties had agreed respecting release of part of it, defendant surrendered a described portion on consideration that drilling and operation of any additional wells on the portion not surrendered should be "wholly within the judgment and discretion" of defendant.

In 1926 Lillie M. Snavely was divorced from plaintiff. On December 14, 1927, Lillie M. Snavely, "a widow," executed a warranty deed of the tract to plaintiff. The deed was acknowledged in San Jose, Cal., and was filed for record on January 4, 1928. On February 7, 1928, Lillie M. Snavely executed the following instrument:

"I owned [description], from September 26, 1905, until on or about December, 1927, at which time I sold and conveyed it to Stephen A. Snavely.

"This land was leased to the Prairie Oil and Gas Company for oil and gas development purposes, and it holds the lease yet, and operates thereon more or less.

"The lease provided that the lessee should place its shackle rods high enough so teams could pass under them in farming operations, and it also provided no shackle rods should be placed on or over tillable land without the consent of the lessors, and I never gave my consent for that. The lessee never put its shackle rods high enough for teams to pass under them in farming operations, and I never gave consent for any change in that regard, or in any other regard. But notwithstanding, the lessee put shackle rods on and over the land in different places, and leading off in different ways, and over cultivatable land, and to the loss and damage of my premises, and to me, to the extent the tillable land could not be farmed, and it is maintaining them yet. I do not know when the shackle rods were put in.

"For and in consideration of one dollar, and other good and valuable considerations, the receipt of which is hereby acknowledged, I sell and assign to Stephen A. Snavely all right, title and claim I have against the Prairie Oil and Gas Company for all the damages done me or on the land while I owned it."

The action was commenced on March 20, 1928. The petition pleaded provisions of the lease relating to shackle work, and breach of the provisions by reconstruction of the pumping system in 1919. There was an allegation that since the shackle rods were installed the land had not been cultivated, and Lillie M. Snavely and plaintiff had been deprived of use of the land for a period of eight years. A fair rental value of the land was $150 per year, and the loss and damage on account of that item was $1,200. Because the land had not been cultivated it had become overgrown with shrubs and trees, which had to be cleared off, causing additional damage of $100. Maintenance of the shackle rods constituted a continuing nuisance. The assignment from Lillie M. Snavely to plaintiff was pleaded. The prayer was for damages in the sum of $1,300, and abatement of nuisance.

At the trial, which occurred in April, 1929, plaintiff introduced in evidence the lease, his deed, and his assignment, and testified concerning obstruction of farming operations by the shackle rods since they were installed in 1919. Plaintiff testified he could not farm the land for the shackle rods, he could not rent the land to anybody, and he would not farm it himself. The statement was stricken out, and properly so. Plaintiff could not determine the case in such summary fashion. It was incumbent on him to produce

some facts from which the jury might determine whether the land could be farmed, or rented for farming purposes. For the same reason plaintiff was not permitted to say whether it was "practicable" to farm the land with shackle rods on it.

Plaintiff testified the land had been partly plowed, and partly not, for the last ten years, but you could not do a good job of plowing. You could plow right up to the shackle rods, and you could drive a team of horses across them if you laid them down. Plaintiff testified a tenant named Taylor was on the land in 1919, and had it in wheat. Plaintiff testified he did not know whether the land was rented in 1920, but it might have been. He thought the land was rented in 1921. He did not know whether the land was rented in 1922. There was a man named Meyer whose boy was tenant and farmed the land about 1923. Plaintiff did not know whether the land was farmed in 1924, but there was a man named Hulbert who was a tenant on the land, farmed part of it, shucked his corn, and quit. Plaintiff said Hulbert could not farm all of the land because of the shackle rods. Plaintiff also testified he rented a little of the land to a fellow named Holverson a few years back. Plaintiff said Holverson could not do anything with the shackle rods. Plaintiff said he could not tell whether the land was farmed in 1926 or 1927, but he testified as follows:

· "Q. How about 1928—that is, last year—was that land farmed last year? (No answer.)

"Q. It was in corn, wasn't it? A. Yes, sir.

"Q. The whole tract? A. A darky had it in corn.

"Q. Mr. Snavely, was this tract here planted in corn in 1928, in between wells 5 and 6? [Shown on plat.] A. That over east?

"Q. Yes. A. Yes, sir.

"Q. Was this in corn, between these shackle rods, last year? A. Yes, sir.

"Q. Was this tract down here in corn in 1928? A. Part of it.

"Q. Between the shackle rods to No. 3 and the creek, was that in corn in 1928? A. Part of it; some of it was.

"Q. Was this in corn, up along here, west of the power station, and towards the creek; was that in corn? A. Yes, sir.

"Q. Was this, between well No. 5 and the shackle rod running off north; was it in corn last year? (No answer.)

"Q. Was it in corn in the northeast corner last year? A. Yes, sir."

There was testimony that for lack of proper cultivation some of the land had become covered with persimmon sprouts, and plaintiff testified to the number of days he had spent, and which he would have to spend, in grubbing the sprouts. His labor was worth $3

per day. Plaintiff's brother testified the land can be farmed, but the shackle rods are an inconvenience. He said you can farm a strip, no matter how small, if you can turn a team of horses there, and while farming can be done, it is bad farming.

There was testimony that the rental value of the land without shackle rods upon it was four to five dollars per acre per year.

From 1903 to 1906 plaintiff lived in Oklahoma. From 1906 to 1924 he lived in New Mexico. He also lived some time in western Kansas, but he could not tell when; he paid no attention to dates. He said he came back from New Mexico about three times while he lived there, and he finally came to Neodesha about four years before the trial.

As indicated, plaintiff alleged in his petition that shackle rods were erected in 1919, which were not high enough to permit the land to be worked with teams, and because of this breach of the provisions of the lease the land had not been cultivated, and the owners had been deprived of its use, for eight years (1919 to 1928). Plaintiff did not simply fail to prove the allegations of the petition; they were disproved by plaintiff's own testimony. All plaintiff did was to make out a case of farming hindered but not prevented by the rods. He was careful to show no returns from the various tenants and cultivators of the land, but the statement in his brief that no crops were raised after the shackle rods were installed is not merely unsupported by any evidence, it is contradicted by all the evidence there was on the subject. Perhaps plaintiff might have been entitled to go to the jury on difference in rental value of the land with shackle rods upon it, and without shackle rods, if he had made any proof of such damages. In making his proof he adhered to the theory of the petition, and stopped with proof of rental value of the land without shackle rods upon it.

Plaintiff makes a collation of cases relating to how a demurrer to evidence must be considered by the trial court and on appeal. The court is perfectly familiar with all the rules pertaining to that subject. Leaving out of account the testimony of plaintiff's brother, which was apparently fair and reasonable, and which destroyed plaintiff's theory of the case, plaintiff's own testimony was conclusive that the land has been and can be rented, and has been and can be cultivated, notwithstanding the shackle rods. As the opinion in the case of *Acker v. Norman*, 72 Kan. 586, 84 Pac. 531, shows,

the decision in that case has no application to plaintiff's testimony summarized above.

The foregoing disposes of the incidental subject of growth of persimmon sprouts. Plaintiff testified there have always been persimmons all over a part of the land; if the land is plowed they do not bother. In a period of eighteen years, 1906 to 1924, plaintiff came to the farm about three times. He could give no account of the land for the years 1926 and 1927; that is, from about the time of the divorce to the time of the deed to plaintiff. Plaintiff gave no testimony that he or his wife ever made an effort to procure a tenant which failed because there were shackle rods on the land. The land was rented for the year 1928, and was substantially all in corn. The result is, there was no proof that the land became a wilderness of persimmon bushes because shackle rods were erected in 1919.

Besides what has been said, plaintiff acquired his right to sue for damages occurring previous to December 14, 1927, by assignment from his former wife. She could not assign a claim for damages for tort. She could not assign a claim arising out of tort, which gives right of action on "implied contract," except for benefits to defendant's estate. (*Hewey v. Fouts,* 91 Kan. 680, 139 Pac. 407.) The action was not prosecuted on that theory, and damages on that theory were neither alleged nor proved. The assignment was of a claim for damages for breach of an express contract to erect shackle rods in a certain way. There has been just one breach of that contract. The breach occurred in 1919, through reconstruction of defendant's pumping system, which still stands just as it was installed in 1919. Plaintiff testified that in 1921 or 1922 he complained to defendant, for his wife and on his own account, of the way the shackle rods were placed. There were negotiations between plaintiff and defendant, which came to nothing. Plaintiff then knew or should have known the pumping system was permanently established. Defendant pleaded the statute of limitations. Plaintiff pleaded and proved breach of the contract in 1919, authorizing recovery for permanent injury, and so established the defense. (*Parker v. City of Atchison,* 58 Kan. 29, 48 Pac. 631; *McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 Pac. 899; *Taylor v. Newman,* 91 Kan. 864, 139 Pac. 369; *Pever v. Railway Co.,* 100 Kan. 266, 164 Pac. 159.)

The subject of abatement of nuisance was one for the court and not for the jury to consider. Abatement of nuisance was asked on

the ground that since 1919 the land had not been and could not be farmed because of the shackle rods. Plaintiff's evidence was to the contrary. Besides that, the alleged injury occurred in 1919. On the evidence introduced no court would consider destruction of plaintiff's pumping system. The most that might be considered would be specific performance of the contract, and that remedy has long since been lost by laches and limitation.

The judgment of the district court is affirmed.