No. 29,734.

FRANK LACKEY, *Appellee*, v. THE PRAIRIE OIL & GAS COMPANY and
THE INDEPENDENT OIL & GAS COMPANY, *Appellants*.

(297 Pac. 679.)

Opinion filed
April 11, 1931.

*T. J. Flannelly, Paul B. Mason*, both of Independence, *J. S. Simmons, Alva L. Fenn, Max Wyman*, all of Hutchinson, *R. B. F. Hummer* and *John Curran*, both of Tulsa, Okla., for the appellants.

*C. M. Williams, D. C. Martindell, W. D. P. Carey* and *W. H. White*, all of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for injury to pasture land by pollution of a stream which flowed through the land. Plain-- tiff recovered, and defendants appeal.

Defendants brought in and operated oil wells in a field traversed by the stream. The oil wells are upstream from plaintiff's land. The action was commenced on July 19, 1929. The material allegations of the petition follow:

"Said creek is known as Sand creek, and is capable of and has always furnished plaintiff's land with sufficient running water to water stock; that in times of excessive rains or freshet said creek would overflow onto plaintiff's land.

"Plaintiff further states that his land . . . is pasture land, and that plaintiff used said land for the purpose of pasturing his own cattle, and pas- turing cattle of others for a compensation; that the said defendants, in operating their said oil wells, have negligently and carelessly allowed the oil and refuse matter to run over and into said Sand creek, and pollute the water of said Sand. creek, so that the same became unsafe for stock water, and that during the last four or five years, the said defendants have continuously and negligently permitted oil and refuse from said oil wells to flow into said Sand creek and out and upon the land of plaintiff, and that because of the polluted · condition of the water in said creek as caused by the defendants, said water in said creek is injurious to stock; that by reason of the pollution of said water, plaintiff is unable to lease his pasture, to take stock for pasture, and is

unable to pasture his own stock upon said land; that both of said defendants have contributed jointly in the pollution of said water, and thereby damaged plaintiff and plaintiff's land; that plaintiff has been damaged by reason of the continual pollution of said water in the. manner above described, at least the sum of four thousand dollars ($4,000)."

The petition pleaded injury to the freehold. Things severable from the soil and capable of suffering independent injury considered apart from the soil, were not mentioned, such as prairie hay, cultivated crops, or other products classifiable either as *fructus naturales* or *fructus industriales*. Nothing was involved but the land in its natural state—soil, grass attached to the soil by roots, and flowing water.

In its natural state the land was usable for pasture. By continual pollution of the water defendants destroyed that use as effectively as if they had excluded plaintiff from possession. The petition alleged plaintiff could not lease the land for pasture, could not take stock for pasture, and could not pasture his own stock. The proof at the trial in 1930 was that the number of cattle plaintiff could procure to pasture steadily declined, and the land was practically worthless for pasture.

The petition said the deprivation of which plaintiff complained began four or five years before plaintiff commenced his action. Plaintiff testified several times that oil and refuse from defendants' wells had been running into Sand creek ever since operation of the oil field began. He said he noticed the pollution to such an extent that cattle would not drink from the stream in 1925 and 1926; cattle acted like they were starved for water, and drank out of mudholes along the road when he was changing them for the season. There was testimony for plaintiff that the soil where the oil wells are located is sandy, and salt water from the wells seeps through the slush ponds and runs down into the stream. There was other testimony for plaintiff that the pond for one well was pure sand, that salt water ran out of the ponds into the creek when there was a big rain, and that salt water had been drained out of the ponds and allowed to flow into the creek. A supervisor of the oil field for the Prairie company from the time the first well was drilled in 1925, made the following admission:

"Defendants had to rebuild those ponds after nearly every rain, every year since they have had them, because there isn't anything but sand out there, and a hard rain such as occurs every year will wash the banks down and necessitate rebuilding."

Plaintiff testified that in 1927 the water looked dirty and oily and tasted bad, worse than salt water. Steers in the pasture failed to take on flesh, and all through the season "scoured, or run off at the bowels." Sand creek is a small stream with low banks, and refuse flowed down the creek when it rained, and spread over the grass. There was a flood in 1929, but an ordinary rain brought down as much refuse as the flood. The jury found specially that defendants did not have adequate ponds to hold refuse and salt water, that the salty condition of the water in the creek damaged the water for purpose of watering cattle, and that failure to provide sufficient ponds damaged plaintiff's premises by polluting the stream and damaging grass.

Defendants demurred to the petition on the ground it did not state facts sufficient to constitute a cause of action in favor of plaintiff, and so raised the question whether the action was barred by limitation. The demurrer was overruled, and defendants answered. The answers pleaded the statute of limitations.

Plaintiff was the first witness examined at the trial. In the course of his examination by his own counsel the following occurred:

"Q. I will ask you whether or not the same condition will exist as to the pasture next year, I mean this year, 1930?

"By Mr. Simmons [for defendants]: We object to that as incompetent, irrelevant, and immaterial.

"By the Court: Now, you are going into future damages.

"By Mr. Simmons: Our contention is that this is limited to the two years.

"By the Court: That is my understanding.

"By Mr. Simmons: I want to repeat, however, I think their petition and a good deal of the evidence places it in the line of permanent damages, and we aren't waiving that proposition at all.

"By Mr. White [for plaintiff]: Our position is this: That under this petition we are asking for damages to the land, including the pasture, whether temporary or permanent, whatever the evidence and the observations of the jurors indicates there; that we are entitled to that damage, so that proof is competent here not only as to the two years that have been shown here, but also as to whatever damages we have been occasioned by this pollution to our pasture out there.

"By the Court: All right; the objection will be overruled to that question.

"By Mr. Simmons: The court means they can prove permanent damages to the land?

"By the Court: Yes, sir.

"By Mr. Williams [for plaintiff]: No, sir; I will not say that. That isn't what he said.

"By the Court: I am overruling the objection.

"By Mr. Williams: Well, I am not going to ask the question—not that I am disagreeing with counsel."

Plaintiff limited proof of damage to the two-year period, July, 1928, to July, 1930; that is, to the period beginning one year before the action was commenced, and extending one year after the action was commenced. A demurrer to plaintiff's evidence was overruled, and the court instructed the jury they might allow damages for loss of use of the pasture for the period covered by the proof, leaving out of account permanent injury to land or grass or water. The jury returned a verdict for plaintiff for $2,000.

Counsel for plaintiff not only construed their own petition, but they construed it correctly. The petition stated a cause of action for injury to land, and for permanent injury to land; and plaintiff's self-denial in extending proof did not change the nature of the cause of action.

There was but one cause, and one result: pollution of stream, and injury to land used for pasture. The injury took two forms: fouling the water so stock would not drink it, or if they did they were made sick and did not thrive; and fouling the grass with refuse. Pollution began in 1925, and steadily increased as the number of oil wells increased from one to twelve or fourteen. The oil wells were permanent structures, designed to continue indefinitely. The conditions under which they were operated were such that the injury was constant as well as progressive. The pasture season begins in the spring. Plaintiff testified he turned cattle into the pasture in early spring. He noticed cattle would not drink the water of the creek in 1926. His description of the water in 1927 has been given, and it is idle to say he did not have reason to know he had suffered permanent injury as early as the spring of 1927. As indicated, the action was commenced July 18, 1929.

The nature of a cause of action and the time when it accrues are determined by the facts, and not by when the injured person chooses to sue, or what he chooses to sue for. The principle is illustrated by the decision in the case of *Buss v. Missouri Pac. Rld. Co.*, 120 Kan. 689, 244 Pac. 1059, cited by plaintiff. A watercourse was obstructed in 1916 or 1918. In 1923 crops were destroyed. In the opinion the court said a cause of action for damage to the land arose when the obstruction was built, and a cause of action for damage to crops occurred when the water destroyed crops. The case of

*Union Trust Company v. Cuppy,* 26 Kan. 754, also relied on by plaintiff, was an action for injury to crops by an obstructed watercourse. The injury occurred several years after the obstruction was built. The opinion was written nearly fifty years ago, and the writer of the opinion did not have the benefit of the searching analysis of tort liability which has been made in recent years. While there was speculation as to whether plaintiff had a cause of action when the obstruction was built, and what the remedy for the wrong might have been, the court refused to decide either question, and properly held the cause of action under consideration— for injury to crops—arose when the injury occurred.

When the erection of an obstruction does not of itself cause injury to land, but subsequently causes injury by flooding the land, cause of action for injury to the land arises when the flooding occurs. (*Beard v. Kansas City,* 96 Kan. 102, 150 Pac. 540, and cases collated in the opinion.) In this instance the bringing in of the first oil well in 1925 caused injury to plaintiff's land, and the permanent nature of the injury was demonstrated more than two years before he sued for damages.

If plaintiff could sue in 1929 for damages for part of 1928, all of 1929, and part of 1930, he could sue in July, 1931, for the remainder of 1930, all of 1931, and part of 1932, and he could bring successive actions for like periods for the life of the oil wells. The policy of the law forbids this to be done. In the case of *Parker v. City of Atchison,* 58 Kan. 29, 48 Pac. 631, the syllabus reads:

"Where a permanent improvement is made by a city on the bank of a watercourse in such a way as to narrow the channel and wash and injure private property on the opposite bank, the city is liable for the injury; but an action therefor can only be brought within two years after the erection of such improvement." (¶ 4.)

In the opinion by the present chief justice it was said:

"In making the improvements it is not required to provide for extraordinary floods and storms, but must exercise reasonable care to guard against such conditions as are ordinarily incident to the creek. It would seem from the testimony that the mere improvement of the alley could not have operated as a very serious injury to 'the property of the plaintiffs in error; but assuming that it was injured to some extent, they were too late in claiming a recovery. As the improvement is permanent in its character, but one action could be maintained, in which all damages, present or prospective, would be recoverable. The action accrued in 1884, when the structure was completed; and, under the third subdivision of section 18 of the civil code, it was barred at the end of two years." (p. 39.)

Other cases to the same effect are cited in the opinion in *Snavely v. Prairie Oil & Gas Co.,* 130 Kan. 725, 730, 288 Pac. 541. The result is plaintiff's action was barred by the statute of limitations.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the demurrer to plaintiff's evidence.

SLOAN, J., not participating.