No. 34,893

MAGGIE O. EYMAN, *Appellant,* v. THE NATIONAL UNION OIL AND GAS COMPANY, *Appellee.*

(109 P. 2d 477)

Opinion filed January 25, 1941.

*C. Glenn Morris,* of Topeka, for the appellant.
*Clifford Sullivan,* of Howard, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: In 1927 plaintiff gave an oil and gas lease on 160 acres of land. At the times hereinafter mentioned the defendant was the owner of the lease.

The operations of defendant which caused the damage complained of in the petition occurred on the east half of the southeast quarter of the section. The dwelling house is located in the northeast corner of the south forty. Wildcat creek is a stream running from the southwest to the northeast, coming into the south forty on the west line and running in a northerly and easterly direction until it crosses the line into the north forty west of the farm buildings, thence running east and crossing the east line north of the buildings.

Producing wells were brought in about 1928. Shortly thereafter a pond was built on the south bank of the creek, north and west of the farm buildings, and this pond is referred to as the "old" pond. Later and about 1933, a "new" pond was erected near the center of the north forty. Salt water and oil sediment were deposited in these ponds.

The petition alleged:

"That by virtue of the said lease defendant had, and has the right only to develop, operate upon, and use the said leased premises in a manner reasonably necessary and proper to the practical development thereof and production therefrom of oil or gas, with due, lawful, and reasonable regard and respect for plaintiff's rights, as the fee owner of said premises; that in disregard of plaintiff's rights in and to said leased premises, defendant has negligently, care-

lessly and arbitrarily operated upon and handled the said premises, and permanently damaged the same through impractical and unusual operations, all unnecessary to the reasonable development of the said premises for oil and gas, as hereafter more particularly averred."

It was alleged that in 1933 the defendant constructed a large pond upon the east half of the southeast quarter, and placed large quantities of salt water and other polluting liquids and substances therein; that defendant carelessly and negligently permitted the dam to leak; that the salt water and other polluting substances oozed and flowed through the dam, and that about two acres of plaintiff's land was saturated and polluted, and the value of the two acres was destroyed to plaintiff's damage in the sum of $200. It was alleged that the two acres was surrounded by other valuable land and the balance of the land was thereby permanently depreciated to plaintiff's damage in the sum of $1,000.

For a third cause of action the petition alleged:

"1. That to the east and south of plaintiff's leased premises, is located the Palmer farm, which farm defendant, between the years 1928 and to November, 1938, operated for oil and gas; that the wells upon the said Palmer farm produced large volumes of salt water, base sediment, and other pollutive liquids, destructive to vegetation and the fertility of soil, upon coming in contact therewith; that between the years 1933 and November, 1938, defendant brought large volumes of said salt water, base sediment, and liquid impurities, to the surface of the ground from one well located upon and near the west line of the said Palmer lease, and across the road, which extends between plaintiff's lands above described, and the said Palmer lease; that after bringing said poisonous, destructive, and impure liquids and substances to the surface of the ground, defendant ran the same through a pipe line which extended from the said well along the said road to the east of plaintiff's land, and thence to plaintiff's land, upon which defendant imported, brought, and dumped the said poisonous liquids and substances into a small pond; that said pond was located on plaintiff's land a short distance north of the south section line of the north half of the east half of the southeast quarter of the leased premises.

"2. That Wildcat creek extends and flows in a generally southwesterly northeasterly direction through and across the quarter section of plaintiff's leased premises, on which said creek is located, said pond being near to and substantially upon the banks of the said Wildcat creek; that said creek is a natural watercourse in and through which naturally flows a substantial stream of good, pure water, used and useful in its natural state for irrigation, and for watering of livestock.

"3. That to the south and east of said creek, and the said pond located substantially upon the banks thereof, as above alleged, plaintiff owns and maintains her residence and home; that to the north and west of plaintiff's said residence, and between the same and the said Wildcat creek, and said pond upon the banks thereof, plaintiff, so far as defendant's operation would

permit, has for many years maintained and used a feeding lot for livestock, particularly cattle; that growing along Wildcat creek, and in the general vicinity of the said pond, located upon the banks thereof, defendant owned a large number of thriving, valuable, and healthy trees; that said trees were of different sizes, kinds, and varieties, consisting of elm, hackberry, walnut, boxelder, mulberry, locust, and sycamore."

It was alleged that almost continuously from 1933 until November, 1938, defendant "imported and brought in and upon plaintiff's land" and placed in the pond large quantities of salt water and polluting substances from the Palmer lease; that defendant permitted the substances to escape, and that the water in Wildcat creek became charged, polluted and poisoned; that the banks and soil along the creek became polluted and poisoned; that by reason thereof the trees above described were destroyed to plaintiff's damage in the sum of $1,000.

In its answer defendant set up the statute of limitations. The court sustained defendant's demurrer to the evidence as to any damage to the trees—to the two-acre tract—and damage to the land resulting from the destroyed acreage. The appeal is from the order sustaining the demurrer to the evidence.

The theory of plaintiff urged on this appeal is thus stated:

". . . Plaintiff contends that this is not an action for damage because of a trespass, but an action to recover damages sustained by reason of an abatable nuisance, and that she may recover all damage actually sustained within the two years immediately preceding the suit, and if such damage sustained during said two years immediately preceding the suit is in itself permanent as to the injury, that permanent damage as to that injury may be allowed. . . ."

Plaintiff relies upon *K. P. Rly. Co. v. Mihlman,* 17 Kan. 224; *Union Trust Company v. Cuppy,* 26 Kan. 754; *Kansas City v. King,* 65 Kan. 64, 68 Pac. 1093; *Sullivan v. Davis,* 29 Kan. 28; *Telegraph Co. v. Moyle,* 51 Kan. 203, 32 Pac. 895.

As stated, the lease under which defendant operated was given in 1927. Production began in 1928 and by 1933 eight producing wells had been completed. Prior to 1933 the salt water and refuse from these wells and from the Palmer lease were conducted into the old pond located on Wildcat creek just north and west of the residence occupied by plaintiff. The damage to the trees set forth in the third cause of action was based on pollution from the old pond. There was testimony that the leakage from the old pond caused the construction of the new pond to the north in 1933. Thereafter the salt water and refuse from the wells on the lease were deposited in the

new pond—the salt water from the Palmer lease was conducted into the old pond until the Palmer well was plugged in 1938.

Appellant testified that there had been no water in Wildcat creek· fit for cattle to drink since the oil operations began; that 1936 was the last time she took cattle for pasture; that the creek got salty in the latter part of the summer; that the old pond was built so it would drain into the creek; that she knew in 1933 that the old pond was leaking into the creek; that the trees that were damaged were near the old pond; that she had resided on the premises during the time defendant had operated the lease. She also stated that she knew in 1936 that there was leakage from the new pond and that she had a man named Shaw make ditches around the new pond to carry the water to the creek; that the wheat around the new pond died in the spring of 1937 and the weeds had been dead for several years. There was testimony that most of the trees were dead in 1937; that they did not leaf out in the spring of that year.

Plaintiff's action was commenced in April, 1939.

From the outline of plaintiff's evidence above set forth, it is clear the injuries complained of were known and observable more than two years prior to the institution of the action. The trees did not leaf out in the spring of 1937, the weeds around the new pond had been dead for several years, and the wheat around the new pond died early in the spring of 1937. Therefore, it is clear that for the several items sued upon plaintiff's cause of action was complete more than two years prior to the date of this suit.

Under the rule announced in a long series of cases (*Lackey v. Prairie Oil & Gas Co.*, 132 Kan. 754, 297 Pac. 679; *McDaniel v. City of Cherryvale*, 91 Kan. 40, 136 Pac. 899; *Fulmer v. Skelly Oil Co.*, 143 Kan. 55, 53 P. 2d 825; *Seglem v. Skelly Oil Co.*, 145 Kan. 216, 65 P. 2d 553) we think the action was barred by the statute of limitations.

Under the issues as framed by the pleadings the action was for permanent damages. But assuming the action was for the loss of the trees apart from the damage to the real estate, the plaintiff would not be in a more favorable situation. The cause of action accrued upon the death or destruction of the trees, and that was more than two years before the action was begun.

The demurrer to the evidence of the plaintiff was properly sustained.

The judgment is affirmed.